UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DOMINION RESOURCES BLACK }
WARRIOR TRUST, }
 }
    Appellant, }
 } Case No.: 2:16-cv-00058-RDP
v. }
 }
WALTER ENERGY, INC., }
 }
    Appellees. }

# MEMORANDUM OPINION

## I. Introduction

This appeal arises as a part of the Chapter 11 bankruptcy of Walter Energy, Inc., and its subsidiaries (collectively referred to as "Debtors" or "Walter Energy," which includes Walter Black Warrior Basin, LLC ("WBWB")).[1] It is the largest Chapter 11 bankruptcy in Alabama history.[2] Appellant Dominion Resources Black Warrior Trust ("Dominion" or "Appellant") appeals from the Bankruptcy Court's Memorandum Opinion and Order on Walter Black Warrior Basin, LLC's Motion for Order *Nunc Pro Tunc* (1) Authorizing Walter Black Warrior Basic, LLC To Reject Certain Agreements with Dominion Resources Black Warrior Trust, and (2) Granting Related Relief (the "Rejection Order"). (Doc. # 32-1).[3] The appeal concerns certain agreements (the details of which are set forth below) based on the sale of certain oil and gas extracted from and connected to Debtors' Core Assets.

---

[1] *See In re Walter Energy, Inc.*, Case No. 2:15-bk-2741-TOM11 (Bankr. N.D. Ala. 2015).

[2] *Id.*

[3] The Rejection Order is located in the Bankruptcy Court docket at *In re Walter Energy, Inc.*, Case No. 2:15-bk-2741-TOM11 (Doc. # 1491).

After this court learned of the sale of Walter Energy's Core Assets as of March 31, 2016, it ordered the parties to file a joint report setting forth their positions as to whether this appeal is now moot. (Doc. # 44). In the parties' Joint Report Respecting Mootness of the Appeal (Doc. # 45), Appellant argues that the appeal is not moot. Walter Energy disagrees. On July 12, 2016, the court heard oral argument from the parties concerning their positions. (Doc. # 50). After careful review, and for the following reasons, the court concludes this appeal is moot and this action is due to be dismissed.

**II.     The Agreements and Bankruptcy Court's Findings of Fact[4]**

On December 28, 2015, the Bankruptcy Court entered an order authorizing WBWB to reject three related agreements. (Doc. # 32-1). Specifically, those agreements were: (1) the Overriding Royalty Conveyance dated June 1, 1994 by and between WBWW, as successor in interest to Dominion Black Warrior Basin, Inc. ("DBWB"), on the one hand, and NationsBank of Texas, N.A. and Mellon Bank (DE) National Association (the "Trustee"), as trustees of Appellant, on the other hand (*In re Walter Energy, Inc.*, Case No. 2:15-bk-2741-TOM11, Doc. # 983-4) (the "Royalty Agreement"); (2) the Trust Agreement of Dominion Resources Black Warrior Trust dated May 31, 1994 by and among WBWB, as successor in interest to DBWB, WBWB, as successor in interest to Dominion Resources, Inc., and the Trustee (*Walter Energy, Inc.*, Case No. 2:15-bk-2741-TOM11, Docs. # 983-2 – 983-3) (the "Trust Agreement"); and (3) the Administrative Services Agreement dated June 1, 1994, by and among WBWB, as successor in interest to Dominion Resources, Inc., and Dominion (*Walter Energy, Inc.*, Case No. 2:15-bk-2741-TOM11, Doc. # 983-19) (the "Services Agreement") (the three agreements collectively, the "Agreements"). (Doc. # 32-1). As the Bankruptcy Court noted, the Agreements "are interrelated by their own terms." (*Id.* at ¶ 20).

---

[4] These general facts are gleaned from the Rejection Opinion. (Doc. # 32-1).

In summary, the Agreements provide for WBWB's operation of gas wells in certain fields (on lands in Tuscaloosa County in which DWBB held an interest in various oil, gas, and mineral leases) and to pay Dominion a 65% interest on the gas. (*See* Doc. # 32-1 at ¶¶ 11-20); *see also generally* Agreements. Dominion has no right to operate the gas production but only may receive payments from that operation conducted by WBWB. (Doc. # 32-1 at ¶ 16; *Walter Energy*, No. 2:15-bk-2741-TOM-11, Doc. # 983-4, Royalty Agreement at §§ 6.05, 6.06). "The Royalty Agreement does not require WBWB to segregate the Proceeds attributable to Dominion's Royalty Interest." (Doc. # 32-1 at ¶ 18). Pursuant to the Services Agreement, Dominion pays WBWB a quarterly fee for administrative services WBWB provides to Dominion. (*Id.*).

The Bankruptcy Court found that the Agreements "are burdensome and unprofitable for WBWB. According to David Hanford, Assistant Controller of Walter Energy, continued performance under the [] Agreements would require WBWB to operate the Dominion wells at a loss, while obligating WBWB to pay Dominion millions annually." (Doc. # 32-1 at ¶ 21).

### III.   The Bankruptcy Court's Conclusions of Law

After reviewing the Agreements, the Bankruptcy Court made the following conclusions of law: "As a threshold matter, the Dominion Agreements will rise and fall together, as they are inextricably intertwined. . . .  If WBWB is permitted to reject the Royalty Agreement, the core purposes of the Trust Agreement and Services Agreement will cease to exist." (Doc. # 32-1 at ¶ 22). The terms of the Trust Agreement also indicate that if the Royalty Agreement is rejected, the Trust Agreement will soon self-terminate. (*Id.*).

3

WBWB asserted that the Agreements are executory contracts and, thus, may be rejected under Section 365 of the Bankruptcy Code.[5]  (*See* Doc. # 32-1 at ¶ 23).  The Bankruptcy Court determined that a central issue in this aspect of the parties' dispute was whether that characterization was correct.  (*Id.* (finding that "the threshold question is whether they are 'executory' contracts")).  The Bankruptcy Court concluded that under Eleventh Circuit jurisprudence, "if the [Agreements] are contracts, under the functional approach they are 'executory contracts' that are subject to rejection under section 365."  (*Id.* at ¶ 26).

Dominion argues that, contrary to the Bankruptcy Court's conclusion, the Royalty Agreement is not a contract, but rather a conveyance giving Dominion an ownership interest in the proceeds from the gas production or the gas itself.  (Doc. # 32-1 at ¶ 27).  Accordingly, the Bankruptcy Court concluded that the agreements are subject to rejection under Section 365.  (*Id.*).  The Bankruptcy Court noted that "[t]he characterization of the Royalty Agreement turns on the nature of the Royalty Interest under Alabama law."  (*Id.*).  That is, the Bankruptcy Court determined that it must examine the nature of the underlying mineral leases because "if a lease is in the nature of personal property, a royalty interest in that lease will also be characterized as personal property.  If the lease is characterized as a fee interest in real property, the royalty interest will also be classified as a fee interest in real property."  (*Id.* at ¶ 28 (citation omitted)).

The Bankruptcy Court further reasoned that "[t]o analyze the nature of the rights conveyed to a lessee under an oil and gas lease in Alabama, it is essential to first examine the nature of the interest in the gas held by the landowner."  (Doc. # 32-1 at ¶ 29).  Alabama determines ownership of oil and gas under the "non-ownership theory," which recognizes the migratory nature of oil and gas and requires actual possession to establish ownership.  (*Id.* at ¶ 30

---

[5] Section 365 provides, among other things, that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365.

(citing *NCNB Tex. Natl. Bank, N.A. v. West*, 631 So. 2d 212, 223 (Ala. 1993))).  "Thus, in non-ownership states like Alabama, a landowner does not own the gas in the ground, but only the right to reduce it to possession."  (Doc. # 32-1 at ¶ 31).  "The material question, then, is what is the nature of a right to reduce gas to possession?"  (*Id.*).  Dominion asserted (and still asserts in this court) it to be in the nature of real property.  (*Id.*).

The Bankruptcy Court held that Alabama case law establishes the right to reduce gas to possession is in the nature of a personal property interest, or at least "something less than a fee or freehold interest."  (Doc. # 32-1 at ¶¶ 31-32 (citing *NCNB*, 631 So. 2d at 223; *State v. Roden Coal Co.*, 197 Ala. 407, 414 (1916))).  The court further concluded, "as a matter of law, the leases cannot convey anything more than the right to reduce gas to possession, because a grantor cannot convey a greater interest than he possesses."  (*Id.* at ¶ 33).  Accordingly, "[s]ince the Leases underlying Dominion's Royalty Interest are personal property interests under Alabama law, the Royalty Agreement is necessarily a personal property interest, because WBWB could not convey a greater interest than it possessed."  (*Id.*).

For these reasons, the Bankruptcy court held that the Royalty Agreement did not convey a fee interest in the gas to Dominion, but gives Dominion a contractual right to payment.  (Doc. # 23-1 at ¶¶ 33-34, 36).  "Because the remaining Dominion Agreements serve only to implement the Royalty Agreement, they are also contracts that do not convey fee interests in the Subject Gas.  As contracts, the Dominion Agreements may be rejected under section 365 if they are 'executory.'"  (*Id.* at ¶ 37).  The court held that because the Agreements are executory contracts, and, "because they are burdensome to WBWB, and rejection will benefit WBWB, its estate, and its creditors," it follows that the Agreements are to be rejected under Section 365.  (*Id.* at ¶¶ 37, 39).

## IV.     Procedural History

Appellant timely brought this appeal on January 11, 2016.  (It also filed two other related appeals, case numbers 2:15-cv-1531-RDP and 2:15-cv-1773-RDP, which this court dismissed without prejudice upon consent of the parties because the issues presented there may be resolved by this appeal).  Appellant did not seek a stay of the underlying Core Asset Sale pending appeal in either the Bankruptcy Court or this court.  (*See, e.g.*, Doc. # 50 at p. 7:6-8).

Subsequently, Appellant filed a Motion To Certify Question to the Supreme Court of Alabama.  (Doc. # 35).  In that Motion, Appellant asks this court to certify "the question of whether the interest of a landowner to oil and gas under the property—that is, the right to reduce the oil and gas to possession or sever the right for economic consideration—is in the nature of a real property interest or a personal property interest."  (Doc. # 35 at p. 1).  According to Appellant, the outcome of this appeal depends upon the answer to that question.  (*See* Doc. # 50 at p. 9:11-13).

The Motion To Certify is fully briefed and under submission.  (Docs. # 35, 41, 42, 43). Soon after briefing was completed, this court ordered the parties to address whether this appeal was mooted by the Core Asset Sale that took place on or about March 31, 2016.[6]  (Doc. # 44). The parties filed a joint report setting forth their respective positions.  (Doc. # 45).  Walter Energy contends this case is moot.  Appellant argues it is not.  (*Id.*).  Additionally, Appellant asserts that upholding the Bankruptcy Court would result in an unconstitutional taking without due process.  (*Id.*).  The court heard oral argument on the parties' assertions on July 12, 2016. (Doc. # 50).

---

[6] The court was aware of the Core Asset Sale due to informal notice from Debtors' counsel and because of filings in other appeals from the Walter Energy bankruptcy.  *See United Mine Workers of Am. v. Walter Energy, Inc.*, Case No. 2:16-cv-56-RDP (Doc. # 28); *United Mine Workers of Am. 1974 Pension Plan & Trust v. Walter Energy, Inc.*, Case No. 2:16-cv-57-RDP (Doc. # 41 at p. 9).

## V. This Appeal Is Moot

Mootness can take three forms: (1) constitutional, (2) statutory, and (3) equitable. *See Bennett v. Jefferson Cty., Ala.*, 518 B.R. 613 (N.D. Ala. 2014). For the following reasons, the court concludes this appeal is statutorily and equitably moot.[7]

### A. Constitutional Mootness

A case is constitutionally moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013). Here, Walter Energy correctly concedes that this appeal is not constitutionally moot. "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot" under the Constitution. *Knox v. Service Employs.*, 132 S. Ct. 2277, 2287 (2012). Appellant plainly has a concrete interest in the outcome of the litigation because it stands to lose proceeds under the Agreements rejected by the Bankruptcy Court. (*See* Doc. # 45 at pp. 2-3). This case is not constitutionally moot.

### B. Equitable Mootness

Walter Energy asserts that this appeal is equitably moot. For the reasons explained below, the court agrees.

"The doctrine of equitable mootness is a prudential, not a constitutional, doctrine that evolved in response to the particular necessities surrounding consummation of confirmed Chapter 11 bankruptcy reorganization plans." *Bennett*, 518 B.R. at 634 (quoting *In re Bodenheimer, Jones, Szwak, & Winchell LLP*, 592 F.3d 664, 668 (5th Cir. 2009) (internal quotations omitted)). "The mootness doctrine, as applied in a bankruptcy proceeding, permits the court to dismiss an appeal based on its lack of power to rescind certain transactions." *In re*

---

[7] Walter Energy contends the related appeals under case numbers 15-cv-1531 and 15-cv-1773 should be dismissed with prejudice for the same reasons. The court and Appellant agree. (*See* Doc. # 50 at p. 28:4-9).

7

*Winn-Dixie Store, Inc.*, 286 Fed. Appx. 619, 623 (11th Cir. 2008) (*per curiam*) (citation omitted). The Eleventh Circuit has observed that "[c]entral to a finding of mootness is a determination by an appellate court that it cannot grant effective judicial relief.  Put another way, the court must determine whether the reorganization plan has been so substantially consummated that effective relief is no longer available."  *Winn-Dixie*, 286 Fed. Appx. at 623 (quoting *In re Club Assocs.*, 956 F.2d 1065, 1069 (11th Cir. 1992)).  To determine whether an appeal is equitably moot, a court "will necessarily consider what relief [it] can provide, given the status of the reorganization plan and its consummation in the interim time."  *Id.* (additional citations omitted).

"Unwinding the consummated [Rejection and Sale Orders] would result in precisely the 'nightmarish situation' that the doctrine of equitable mootness exists to avoid."  *Musilino v. Ala. Marble Co., Inc.*, 534 B.R. 820, 829-30 (N.D. Ala. 2015) (citations omitted).  The court in *Musilino* observed, "[c]ourts are more inclined to invoke the doctrine of equitable mootness when, as here, real property has been transferred as part of an approved" and consummated Bankruptcy Order.  *Id.* at 830.  The underlying bankruptcy and Core Asset Sale involved transfers of large amounts of assets to a newly formed company (the "Buyer"), including real and personal property, and the issuance of permits and licenses, lien releases, and the obtaining of new funding and surety bonds.  (Doc. # 45 at pp. 4, 16; Doc. # 50 at p. 7:12-21).  Employment agreements have been entered into between the Buyer and its employees.  (*Id.*).  Walter Energy further avers that trade vendors are relying on the continuing effectiveness of the Sale Order,[8] (*id.*), and this court cannot grant effective relief without imposing substantial harm to many non-parties as well as to Walter Energy.

---

[8] The court is also aware from other Walter Energy appeals it has heard that Walter Energy and the Buyer consummated a plan that would leave enough funds for Walter Energy to satisfy certain remaining obligations owed to its Chapter 11 creditors and financers and certain regulatory schemes established under federal and Alabama law (*e.g.*, mining reclamation costs).

8

Appellant asserts, to the contrary, that this court can grant relief without undermining the Rejection Order or the Core Asset Sale.[9]  (*See* Doc. # 45 at pp. 9-11; Doc. # 50 at p. 8:21-22 ("We're not asking this [c]ourt to undo the transaction.")).  But that assertion misses the mark.  In the words of Walter Energy, Appellant is "seeking a claim for funds from [WBWB].  [WBWB] is an empty shell.  There is no money in [WBWB] to be gotten."  (Doc. # 50 at p. 3:21-23; *see also id.* at p. 9:2-6 ("What we're asking for, the relief we're asking for and why everything [Walter Energy] have said really doesn't apply, . . . is that we be given the claim for all the amounts presale that should have been due us under the overriding royalty.")).  When pressed at oral argument whether it should have pursued that claim in Bankruptcy Court after its interest was rejected, Appellant contended that, while it "perhaps" should have, there was no need because the rejected royalty interests were its real property interest.  (Doc. # 50 at pp. 9:7-13, 29:3-13).  That contention goes to the question Appellant argues should be certified to the Alabama Supreme Court, but which the Bankruptcy Court correctly determined is settled under Alabama law: "whether the interest of a landowner to oil and gas under the property—that is, the right to reduce the oil and gas to possession or sever the right for economic consideration—is in the nature of a real property interest or a personal property interest."  (Doc. # 35 at p. 1).  The court agrees with the Bankruptcy Court that Appellant did not receive any real property interests.[10]

---

[9] "A ruling by this Court determining that the Royalty Interest was not property of the estate would result in a claim against WBWB for the funds due pursuant to the Royalty Interest from the time that WBWB stopped making those payments through the date of the asset sale to the purchaser.  Dominion would have a claim to any pre-rejection money that the Debtor set aside.  Dominion could obtain meaningful relief from the complained-of order rejecting the Royalty Agreement despite its failure to seek a stay of the Sale Order. . . .  Also, the fact that the Sale Order has been implemented is not entirely relevant" because it is not a reversal of a reorganization plan.  (Doc. # 45 at pp. 9-10).

[10] Appellant admitted that if indeed it is not their property but property of Debtors' estate "they [Walter Energy] are right."  (Doc. # 50 at p. 13:13).

Under Alabama law, "[c]oal, like gas, is a part of the lands." *NCNB*, 631 So. 2d at 223. However, "Alabama determines ownership of oil and gas under the nonownership theory, which recognizes the migratory nature of oil and gas and requires actual possession to establish ownership." *Id.* (citations omitted). And, "[t]he owner of the property containing gas has the right to reduce the gas to possession or to sever the gas rights by conveyance." *Id.* Stated otherwise, "the right held by the landowners is 'the right to reduce the oil and gas to possession or to sever this right for economic consideration.'" *Id.* (citations omitted). In that vein, Appellant contends that the question is whether it is "real property or is it something other than real property." (Doc. # 50 at p. 10:13-14). *See also NCNB*, 631 So. 2d at 223 ("While the distinction between 'ownership [in place]' and 'non-ownership' of oil and gas may have significant implications in other contexts, it does not affect the extent of extraction rights."). The Bankruptcy Court considered these rights and correctly found that the interests conveyed to Appellant by the Royalty Agreement were personal property interests.

The Alabama Supreme Court has observed that "[c]oal, like gas, is a part of the land; it is, like gas, a part of the realty, subject to ownership, severance, and sale." *NCNB*, 631 So. 2d at 223. The Alabama Supreme Court also held that a conveyance in certain coal mineral rights by a landowner to a lessee mining company "convey[ed] no greater estate in the land or the minerals in place than a chattel interest." *Roden*, 197 Ala. at 414. That "leasehold interest [wa]s property, a chattel real, . . . in the nature of personal property." *Id.* at 416-17. Because under Alabama law coal is like gas, a leasehold interest of the extractor of gas is in the nature of personal property.

Here, the Royalty Agreement granted to Appellant "an overriding royalty interest . . . equal to and consisting of an undivided sixty-five percent (65%) interest in and to the Subject Gas." (*Walter Energy*, No. 2:15-bk-2741-TOM-11, Doc. # 983-4, Royalty Agreement at p. 1).

The Royalty Agreement provides that "'Subject Gas' means all Gas in and under, and that may be produced from, and that shall be attributable to, the Company Interests. . . ." (*Id.* at p. 6). "Company Interests" is defined in pertinent part as "each and every kind and character of right, title, claim or interest that [DBWB (the predecessor-in-interest to WBWB)] has . . . in the leasehold estate and the Leased Land in and under the Leases[11] and any and all renewals and extensions of the same. . . ." (*Id.* at p. 3). Thus, WBWB only retained a leasehold interest in extracting the gas from the underlying lands (that is, a right to reduce that gas to possession). Under Alabama law, WBWB's leasehold interest was "in the nature of personal property." *Roden*, 197 Ala. at 417. Again, it is axiomatic that a grantor can convey no greater interest than it possesses. *See Harrell v. McMeans*, 598 So. 2d 957, 959 (Ala. 1992); *see also, e.g.*, *Gregg, by Craig v. Sayre's Lessee*, 33 U.S. 244, 254 (1834). Therefore, all WBWB could convey, and all Appellant could and at most did receive under the Royalty Agreement, was a personal property interest.[12] And, as the language of the Royalty Agreement provides, the royalty interests that Appellant actually received were only "a contractual right to payment of a non-specific sum."[13]

---

[11] "Leases" means the oil, gas and mineral leases. . . ." (*Walter Energy*, No. 2:15-bk-2741-TOM-11, Doc. # 983-4, Royalty Agreement at p. 4).

[12] Moreover, the Royalty Agreement provided that Appellant would receive only "a non-operating interest in the Company Interests." (*Walter Energy*, No. 2:15-bk-2741-TOM-11, Doc. # 983-4, Royalty Agreement at § 6.06). Similarly, Appellant "shall have no right to take in kind the production of Gas attributable to" its royalty interests. (*Id.* at § 6.05). The Trust Agreement that created Appellant also stated that Appellant could not convey to its unitholders, and the unitholders could not obtain, anything other than an "intangible personal property interest." (*Walter Energy*, No. 2:15-bk-2741-TOM-11, Doc. # 983-2, Trust Agreement at pp. 2-3; *see id.* at §§ 3.02(b), 4.02).

Further, and in any event, it appears (Appellant's contentions aside) Appellant anticipated that it may not have received real property interests, but instead some other interest terminable by bankruptcy or sale. (*See Dominion Res. Black Warrior Trust v. Walter Black Warrior Basin LLC*, Case No. 15-ap-102-TOM (Bankr. N.D. Ala. 2015) Doc. # 26-3 at p. 5 (Prospectus for Appellant dated June 21, 1994, setting forth risk that its royalty interests may be subject to rejection in bankruptcy of DBWB/WBWB); Doc. # 26-5 at pp. 3, 5 (United States Securities and Exchange Commission Form 10-Ks for the fiscal years ending December 31, 2014, and December 31, 2013, stating that royalty interests may not be considered real property interests under Alabama law and subject to rejection in bankruptcy of WBWB)).

[13] As the Bankruptcy Court recognized, the other Agreements "serve only to implement the Royalty Agreement," and do not covey any fee interests to the underlying gas. (Doc. # 32-1 at ¶ 37).

(Doc. # 32-1 at ¶ 36; *see also Walter Energy*, No. 2:15-bk-2741-TOM-11, Doc. # 983-2, Trust Agreement at § 5.02(a)).

Thus, the court determines that Appellant held no greater than a personal property interest under the Agreements, and it would be extremely burdensome on numerous non-parties to unwind the consummated transactions. Therefore, the court cannot provide the relief Appellant seeks. This appeal is equitably moot.

### C.     Statutory Mootness

Walter Energy argues that this appeal is also statutorily moot. Again, after review, the court agrees.

Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.[14]

11 U.S.C. § 363(m). The Eleventh Circuit has "articulated 'a flat rule governing all aspects of section 363 authorizations,' namely that '[b]ecause this provision prevents an appellate court from granting effective relief if a sale is not stayed, the failure to obtain a stay renders the appeal moot.'" *In re Steffen*, 552 Fed. Appx. 946, 949 (11th Cir. 2014) (quoting *In re The Charter Co.*, 829 F.2d 1054, 1056 (11th Cir. 1987)) (changes in *Steffen*).

Appellant did not move for a stay of the Core Asset Sale pending appeal.[15] Nevertheless, Appellant contends this appeal is not statutorily moot because Section 363(m) is inapplicable. (Doc. # 45 at pp. 5-7; Doc. # 50 at pp. 12:7-8, 12:22 – 13:12). According to Appellant, this is

---

[14] The parties do not contend that Section 363(c) applies here.

[15] Appellant stated that its reason for not doing so was because it is "not seeking to undo the transaction." (Doc. # 50 at p. 10:19-20).

12

because the rejected Agreements were not "property of the estate" under Section 363(b)(1), but its own property.[16]  (Doc. # 50 at pp. 13:22-23, 29:10-13).

Section 363(b)(1) provides in pertinent part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. § 363(b)(1).  By its plain language, Section 363(b)(1) applies only to "property of the estate," and, according to Appellant, the Agreements at issue have not properly been determined to be property of Walter Energy's bankruptcy estate.  That argument goes to the precise legal issues raised in this appeal, and the issue on which Appellant seeks certification to the Supreme Court of Alabama.  (*See* Docs. # 32-4, 35).  But the Bankruptcy Court addressed these issues in the Rejection Order (*see* Doc. # 32-1), and this court has addressed those matters above; both this court and the Bankruptcy Court found in favor of Walter Energy.  Again, Appellant did not move for a stay pending the appeal of the Rejection Order.[17]  By not moving for a stay of the Core Asset Sale pending the appeal of the Rejection Order, and with Debtors' Core Assets having been sold free and clear as of March 31, 2016, Appellant's appeal is statutorily mooted by Section 363(m).

---

[16] For example, see the following exchange between the court and Appellant's counsel at oral argument:

> The Court: Why wouldn't you have just filed, if your claim was rejected, if your interest was rejected, why wouldn't you have filed a claim with the Bankruptcy Court for that rejection interest?
> Mr. Cooper: Well, again, our position has been all along that this is our property.
> The Court: Well, belts and suspenders.
> Mr. Cooper: Perhaps could have been.  But our position has been that it's our property.  The bankruptcy court cannot exercise jurisdiction over property that is not a part of the estate and that we're trying to get our property back.

(Doc. # 50 at p. 29:3-13).

[17] Moreover, as Walter Energy argues, the Bankruptcy Court found the Buyer to be a good-faith purchaser of the Debtors' assets, *see Walter Energy*, No. 15-br-02741-TOM-11 (Doc. No. 1584) ("Sale Order"), and Appellant did not contest that finding.  (Doc. # 45 at pp. 13-14).  That Core Asset Sale, which included the assets that the Bankruptcy Court determined were related to the Agreements closed in March 2016.  The relief sought by Appellant would modify the Sale Order by imposing Dominion Resources's asserted interest on assets the Buyer purchased both in good faith and free and clear of such interests.

13

**VI.     Appellant's Fifth Amendment Rights Were Not Violated**

Appellant argues that if this appeal is found to be moot, the court's ruling would amount to a constitutional taking and denial of due process. That argument is without merit. To be sure, "[t]he bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment." *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589 (1935). The Due Process and Takings Clauses of the Fifth Amendment provide that "No person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. But the Takings Clause does not apply here because (1) the federal government did not take private property for public use, and (2) bankruptcy plainly exists to allow a private debtor to extinguish debts that may include certain property interests. So long as Appellant received due process, its Fifth Amendment rights were honored and it may be deprived of its royalty interests. *See Raskin v. Malloy*, 231 B.R. 809, 814 (N.D. Okla. 1997) ("a general 'constitutional violation' exception to § 363(m) is not appropriate, [with] one exception based on lack of notice, which must necessarily by recognized"). Here, Appellant was afforded due process. It fully participated in the proceedings in the Bankruptcy Court concerning its interests. (*See, e.g.*, *Walter Energy, Inc.*, No. 2:15-bk-2741-TOM11, Docs. # 983, 991, 1110, 1383). It was provided notice and an opportunity to be heard. And, it also had the option (indeed, procedurally, the right) to move to stay the Bankruptcy Court's Order, both in that court and this one. Appellant received due process. The Fifth Amendment's due process requirements are satisfied.

## VII. Conclusion

For these reasons, this appeal is due to be dismissed as moot. A separate order will be entered.

      **DONE** and **ORDERED** this July 21, 2016.

                                              _____
                                              **R. DAVID PROCTOR**
                                              UNITED STATES DISTRICT JUDGE